# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00036-CR

The State of Texas, Appellant

v.

Jerilyn Webre, Appellee

FROM COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
NO. C-1-CR-09-219367, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING

## O P I N I O N

Appellee Jerilyn Webre was arrested for driving while intoxicated.  Webre filed a pretrial motion to suppress the test results from a sample of her blood drawn pursuant to a warrant, arguing that the probable-cause affidavit supporting the warrant was deficient because it did not specify what the police intended to do with her blood after it was drawn.  The trial court agreed and issued an order suppressing Webre's blood test results.  The State appeals that order.  Because the affidavit gave the magistrate a substantial basis for concluding that probable cause existed to support the issuance of the warrant, we will reverse the trial court's order granting the motion to suppress.

## BACKGROUND

Webre was arrested for driving while intoxicated in the early morning hours of November 1, 2009.  *See* Tex. Penal Code Ann. § 49.04 (West 2003) (defining driving-while-

intoxicated offense) (DWI). When she refused to provide a sample of her blood, the police obtained a warrant to take a sample of her blood by presenting a Travis County magistrate with an affidavit for a search warrant. *See* Tex. Code Crim. Proc. Ann. art. 18.01(j) (West Supp. 2010) (authorizing issuance of warrant to collect blood specimen when person is arrested for driving while intoxicated and refuses breath or blood test).

The affidavit submitted to the magistrate details the responding police officers' observations supporting their belief that Webre had committed the offense of driving while intoxicated. The affidavit notes that the police were flagged down by the Austin Fire Department, who had responded to a call of a smoking car on Interstate Highway 35. The responding police officers found Webre sitting in the driver's seat, attempting to start the smoking car. Webre had a strong odor of alcohol, disorderly clothing, bloodshot eyes, slurred speech, unsure balance, a stumbling gait, and gave indicators of intoxication in response to a horizontal gaze nystagmus test. The affidavit also notes that Webre refused field-sobriety tests, admitted having had two "medium" vodka and tonics, used profanity, and vomited during the course of her interaction with the officers.

The affidavit further notes that Webre's apparent condition, along with the investigating officer's training and experience, led the officer to determine that Webre committed the offense of driving while intoxicated, and he placed her under arrest. The affidavit concludes with a request for the issuance of a warrant to take a sample of Webre's blood, which would "constitute evidence of the commission of an offense relative to the operation of a motor vehicle while intoxicated, namely Driving While Intoxicated." Finding the affidavit sufficient to establish probable cause, the magistrate issued a warrant for the seizure of a blood sample from Webre.

Webre filed a pretrial motion to suppress various evidence relating to the offense, including any blood test results, asserting a host of general objections. Her only objection specific to the blood sample, however, was that the affidavit provided by police for the blood-draw warrant was deficient because it did not specify "what the police intended to do with the blood once it was removed from her body" and "how the blood in [her] body would be evidence of a criminal offense." Despite defense counsel's admission that "obviously, we know what they intend to do with it," he sought suppression of Webre's blood test results, arguing that it would be unreasonable to expect the magistrate to infer that Webre's blood would be tested for the presence of intoxicants because such use was not stated explicitly in the affidavit. Persuaded by this argument, the trial court issued the evidence-suppression ruling that the State now appeals.

## DISCUSSION

### Standard of review

When reviewing a trial court's ruling on a motion to suppress, we generally apply a bifurcated standard of review, giving almost total deference to the trial court's determinations of fact and reviewing de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). A unique standard of review has evolved, however, where the motion to suppress is based upon a magistrate's decision to issue a warrant. Because the trial court is constrained to the four corners of the affidavit, *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004), there are no credibility determinations to which we must defer. *McLain*, 337 S.W.3d at 271. Nor is our review de novo, as we are instructed to defer to the magistrate's decision even if we might reach a different result upon de novo review. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Instead, when we review the magistrate's decision to issue a warrant, we

3

apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *McLain*, 337 S.W.3d at 271; *see Illinois v. Gates*, 462 U.S. 213, 236 (1983) (cautioning reviewing courts that negative attitude toward warrants is inconsistent with Fourth Amendment's strong preference for searches conducted pursuant to a warrant). "As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold that magistrate's probable cause determination." *McLain*, 337 S.W.3d at 271; *Rodriguez v. State*, 232 S.W.3d 55, 59-60 (Tex. Crim. App. 2007) (noting that magistrate's finding of probable cause is given great deference "to encourage police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement"); *State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (explaining that review of magistrate's issuance of search warrant is "not de novo" and that "great deference is given to the magistrate's determination of probable cause"). Under this highly deferential review—which the Texas Court of Criminal Appeals calls the "substantial basis" standard—the reviewing court's duty is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Flores*, 319 S.W.3d at 702 (citing W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009-2010)).

**Probable cause required for blood samples**

The Fourth Amendment to the United States Constitution requires that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* Tex. Code Crim. Proc. Ann. art. 1.06 (stating protection against unreasonable searches and seizures).

4

Obtaining a blood sample is a search and seizure within the meaning of the Fourth Amendment. *Dugas*, 296 S.W.3d at 115.[1] Thus, a search warrant may be obtained from a magistrate only after submission of an affidavit setting forth substantial facts establishing probable cause. *State v. Jordan*, No. PD-1156-10, 2011 Tex. Crim. App. LEXIS 911, at \*4-5 (June 29, 2011); *see* Tex. Code Crim. Proc. Ann. art. 18.01(b).

Probable cause exists if, under the totality of the circumstances in the affidavit, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued. *Jordan*, 2011 Tex. Crim. App. LEXIS 911, at \*5; *Flores*, 319 S.W.3d at 702; *Rodriguez*, 232 S.W.3d at 62; *see Gates*, 462 U.S. at 238. In other words, probable cause exists when a magistrate has "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Dugas*, 296 S.W.3d at 116. Lawful issuance of a search warrant in Texas requires the filing of a sworn affidavit containing sufficient facts to show probable cause:

(1) that a specific offense has been committed,

(2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and

(3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

---

[1] Webre implies that a blood draw, given its invasive nature, should be entitled to more protection than the search and seizure of other types of property. The United States Supreme Court and the Texas Court of Criminal Appeals have held otherwise, both recognizing that drawing a suspect's blood constitutes a "search" under the Fourth Amendment—"nothing less, but certainly nothing more." *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (citing *Schmerber v. California*, 384 U.S. 757, 767 (1966)).

Tex. Code Crim. Proc. Ann. art. 18.01(c); *see also id.* art. 18.04 (West 2005) (stating essential contents of search warrant). The magistrate may construe the affidavit in a non-technical, common-sense manner and may draw reasonable inferences from the facts and circumstances contained within it. *Jordan*, 2011 Tex. Crim. App. LEXIS 911, at *5; *Flores*, 319 S.W.3d at 702. The magistrate's determination of probable cause is afforded "great deference." *Jordan*, 2011 Tex. Crim. App. LEXIS 911, at *7; *Rodriguez*, 232 S.W.3d at 59; *see Gates*, 462 U.S. at 236.

When reviewing a magistrate's decision to issue a search warrant, we must interpret the affidavit in a realistic—not "hypertechnical"—manner, *McLain*, 337 S.W.3d at 271, and limit our consideration to the contents of the affidavit's four corners. *Oubre v. State*, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976); *Wheat v. State*, No. 14-10-00029-CR, 2011 Tex. App. LEXIS 2478, at *10 (Tex. App.—Houston [14th Dist.] Apr. 5, 2011, no pet.) (mem. op.). Our focus is on "the combined logical force of the facts that *are* in the affidavit" and not whether other facts could or should have been included. *Rodriguez*, 232 S.W.3d at 62.

Whether the facts stated in the affidavit establish probable cause depends on the totality of the circumstances. *Dugas*, 296 S.W.3d at 116. In this case, the alleged offense of driving while intoxicated entails operating a motor vehicle in a public place while intoxicated, with "intoxicated" being defined as:

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
>
> (B) having an alcohol concentration of 0.08 or more.

Tex. Penal Code Ann. § 49.01(2) (West 2003). Evidence of intoxication may include slurred speech, bloodshot eyes, the odor of alcohol on the breath, unsteady balance, or a staggered gait. *Harris v. State*, 204 S.W.3d 19, 25 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *see Wheat*, 2011 Tex. App. LEXIS 2478, at *12.

The magistrate's role was to determine whether there was substantial evidence to believe that evidence of driving while intoxicated, i.e., an illegal concentration of blood alcohol, would be found in Webre's blood. The observations described in the officer's affidavit—bloodshot eyes, slurred speech, swaying and unsure balance, staggered and stumbling walk, and vomiting—provided a substantial basis to support the magistrate's determination of probable cause that Webre had been driving while intoxicated. Considering the totality of the circumstances recounted within the four corners of the affidavit in this case, the magistrate was well within his discretion to issue the warrant authorizing a draw of Webre's blood for evidence that she had committed the offense of driving while intoxicated.

**Probable-cause affidavit need not specify blood sample's intended use**

Webre's only specific objections to the affidavit in question are the novel arguments that the affidavit is insufficient to support probable cause because it did not state specifically how the blood sample would constitute evidence of the driving-while-intoxicated offense and did not detail what the police intended to "do with the blood sample once it was taken from her body." Webre cites no case, nor have we found any, holding that an affidavit in support of a warrant in this situation must specify what is to be done with the blood sample after it is taken, nor do we know of any authority instructing that the failure to include this sort of detail in an affidavit should invalidate a magistrate's determination of probable cause. Instead, the Court of Criminal Appeals has

7

consistently held that reviewing courts are not to take such hypertechnical views of affidavits supporting warrants. *See, e.g.*, *McLain*, 337 S.W.3d at 271; *Flores*, 319 S.W.3d at 702; *Rodriguez*, 232 S.W.3d at 59; *Hankins*, 132 S.W.3d at 388. The magistrate needed simply to determine the probability that evidence of an offense, i.e., a blood alcohol content exceeding the legal limit, would be found in Webre's blood when the warrant issued.

Even if the detail that Webre suggests were required to justify a warrant, the affidavit is sufficient if the magistrate could have reasonably inferred the required information from the facts set forth in the affidavit. *See Hughes v. State*, 334 S.W.3d 379, 387 (Tex. App.—Amarillo 2011, no pet.) (holding that affidavit need not state how blood draw would constitute evidence of driving while intoxicated because magistrate could draw logical inferences from affidavit's facts: "It takes no great leap of faith or unknown intuitiveness to realize that the magistrate knows that the blood is being requested to analyze it for the presence of blood alcohol for use in a prosecution for DWI."). Could the magistrate here have reasonably inferred that the blood sample sought from Webre would be tested for the presence of alcohol or other intoxicants as evidence that she had committed the crime of driving while intoxicated? We conclude that this was a reasonably available inference that the magistrate could have drawn. *See id*. The offense of driving while intoxicated is defined in part by a measurement of the defendant's blood alcohol concentration—"the number of grams of alcohol per 100 milliliters of blood," Tex. Penal Code Ann. § 49.01(1)(B)—thus it seems obvious that the purpose of obtaining a blood sample in such a case would be to test it for the presence of intoxicants and to make the test results available as evidence of the commission of the driving-while-intoxicated offense. A person arrested for the offense of driving while intoxicated is deemed, by statute, to have consented to the taking of a blood specimen "for analysis to determine the alcohol concentration."

Tex. Transp. Code Ann. § 724.011 (West 2011); *see also id.* §§ 724.011-.019 (establishing process for drawing and testing of blood specimen after arrest in certain driving-while-intoxicated cases), .031-.035 (West 2011) (authorizing suspension of driver's license for refusal to provide blood specimen when such consent is implied).[2] The existence of this statutory authority—designed specifically to determine a defendant's alcohol concentration for use as evidence of the offense of driving while intoxicated—strengthens the reasonableness of the magistrate's inference about the purpose of the blood sample that he was asked to authorize.

Furthermore, the affidavit at issue included statements that Webre:

- had an alcoholic beverage odor,

- had disorderly and disarranged clothing,

- had bloodshot eyes and signs of intoxication in her horizontal gaze nystagmus test,

- had slurred speech,

- needed support for balance and was swaying, staggering, and stumbling as she walked,

- admitted having two "medium" vodka tonics, and

- was vomiting,

a collective abundance of facts supporting the officer's belief that Webre committed the offense of driving while intoxicated. Necessity for the blood draw is also explained in the affidavit, which stated that:

---

[2] The implied consent law provides a framework for drawing blood from driving-while-intoxicated defendants in the absence of a search warrant. *Id.* Once a valid search warrant is obtained, the issue of implied consent becomes moot. *Id.*

9

- Webre refused to take field-sobriety tests and to provide requested breath or blood samples,

- Webre's blood should be seized, and

- evidence will show that Webre committed the offense of driving while intoxicated.

This affidavit contains sufficient facts to show probable cause supporting the issuance of a search warrant because it: (1) provides specific information that the offense of driving while intoxicated had been committed; (2) states that the blood to be seized constituted evidence of that offense or evidence that a particular person committed that offense; and (3) states that the blood to be seized was located "on and within the body of said Jerilyn Webre," the particular person to be searched. *See* Tex. Code Crim. Proc. Ann. art. 18.01(c).

Based on these statements in the affidavit, the magistrate needed no clairvoyance to infer the purpose of the requested blood sample, even if it were not specified in the affidavit itself. It would be nonsensical to ask a magistrate to ignore the commonly known role that blood testing plays in driving-while-intoxicated offenses. The suggestion that Webre's blood would be used by law enforcement officials for any purpose besides testing for evidence of an intoxication offense defies logic, and we reject the invitation to apply such an imaginative interpretation to this affidavit. As the State points out, failure to state the obvious is no reason to invalidate a warrant. *Lagrone v. State*, 742 S.W.2d 659, 662 (Tex. Crim. App. 1987).

The totality of the circumstances in the four corners of this affidavit—scrutinized in a common sense, non-technical manner—shows that there was, at the very least, a "fair probability" that evidence of the crime of driving while intoxicated would be found in Webre's blood when the warrant issued. *See Jordan*, 2011 Tex. Crim. App. LEXIS 911, at *5; *Flores*, 319 S.W.3d at 702;

10

*Rodriguez*, 232 S.W.3d at 62; *see Gates*, 462 U.S. at 238.  Given the deferential standard by which we review a magistrate's probable-cause determination, we conclude that it was entirely reasonable for the magistrate to infer that the blood sample sought from Webre would be tested for intoxicants and used as evidence to prove that she drove while intoxicated, *see Hughes*, 334 S.W.3d at 387, and we further conclude that probable cause existed for the issuance of the warrant because the magistrate had a substantial basis for concluding that Webre's blood sample would uncover evidence of her wrongdoing, i.e., driving while intoxicated.  *See Dugas*, 296 S.W.3d at 116.

## CONCLUSION

We hold that the four corners of the affidavit in this case contain information that provided a substantial basis for the magistrate's finding of probable cause, and accordingly, we sustain the State's sole issue on appeal.  Having sustained the state's sole issue on appeal, we reverse the trial court's order suppressing the results of Webre's blood test.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Reversed

Filed:  August 5, 2011

Publish

11