Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-11-00582-CR

Jesse **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR8173
Honorable Melisa Skinner, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  March 21, 2012

AFFIRMED

After a bench trial, appellant Jesse Garcia was found guilty of the felony offense of driving while intoxicated, having been twice convicted of driving while intoxicated in the past. The trial court sentenced appellant to six years confinement, but suspended the sentence, placing Garcia on community supervision for six years.  On appeal, Garcia raises a single issue, contending the evidence is legally insufficient to support his conviction.  We affirm.

## BACKGROUND

At the time of the events of this case, Detective Brandon Campbell was a patrolman with the San Antonio Police Department and was assigned to the DWI unit.[1] Detective Campbell was called as a witness by the State.

According to the detective, in the early morning hours of July 11, 2008, he was working the third traffic shift from 8:00 p.m. to 6:00 a.m., when he noticed a driver "leav[ing] his lane of traffic" on Highway 151. At that time, the detective turned on his "in-car video." Detective Campbell and the other driver continued onto Highway 90. Detective Campbell stated he followed the vehicle because a driver that causes a vehicle to veer out of its lane might do so for various reasons–including a dropped cell phone or because the driver was eating–not necessarily because the driver is intoxicated. After a while, Detective Campbell got behind the vehicle and began narrating the in-car video. The detective testified he saw the driver "make numerous lane changes," drive across lanes without using the turn signal, and drive on the shoulder. Having observed several traffic violations, Detective Campbell turned on his emergency lights and siren in an attempt to pull the vehicle over. The driver did not stop. When the driver did not stop, Detective Campbell said he took his spotlight and shined it on the driver's side mirror to get his attention, thinking that he might not see the lights or hear the siren. Detective Campbell testified he saw the driver adjust the side mirror to deflect the light from his face. Detective Campbell also used the PA to attempt to contact the driver, advising him to pull over. Despite the lights, siren, spotlight, and PA, the driver did not pull over. Rather, the driver continued for "a few more miles" and exited the highway.

---

[1] Detective Campbell was promoted to detective before this case was tried. We shall refer to him by his current rank.

Detective Campbell also exited the highway and after the driver stopped at a red light, the detective got out of his car and approached the other vehicle. Detective Campbell opened the driver's door and placed the car in "park." Detective Campbell asked the driver to step out of the car. The detective asked to see the driver's license. At that time, the driver was identified as Jesse Garcia.

Detective Campbell testified Garcia "was very slow, sluggish kind of," and appeared to be in "a drunken stuper [sic]." According to the detective, Garcia did not appear "to have all his mental faculties working correctly at the time" because he was unable to follow simple instructions, every movement Garcia made was slow, his attention was easily distracted, he could not remember questions asked seconds before, and his speech was slow. Detective Campbell stated Garcia had a strong odor of intoxicants on his breach, and the odor was "very noticeable" as soon as he opened the driver's door. According to the detective, the odor was noticeable when Garcia was away from the vehicle as well, so it could not have been just an odor emanating from the car.

The detective began to ask questions: where was Garcia coming from, did he know why he was being stopped, etc. After determining Garcia was qualified[2], the detective performed the horizontal gaze nystagmus ("HGN") test, one of the field sobriety tests used by law enforcement. The detective explained the HGN test to the court and stated that of the six possible clues indicating intoxication, Garcia exhibited all six clues. The detective advised the court that four clues on the test indicates a "high probability of being intoxicated."

---

[2] Detective Campbell testified he made sure Garcia's pupils were of equal size, indicating there was no head trauma, which might disqualify him from the HGN test. He noted Garcia had "equal tracking where both eyes tracked and followed the stimulus at the same time," again negating a possible brain injury that would disqualify Garcia from the HGN test. Based on this, Detective Campbell determined Garcia was eligible to take the test.

After performing the HGN test, Detective Campbell had Garcia attempt another portion of the field sobriety test, the walk and turn. Garcia was unable to complete the walk and turn test. According to Detective Campbell, he began to explain the instructions to Garcia, whose balance "seemed to be a little off," but Garcia decided at that point "that he did not want to continue on with any field sobriety tests." Garcia stated, "Sir, I refuse the test." Detective Campbell noted Garcia would sway at times and sometimes stagger.

Garcia did not want to say the "ABCs" and did not want to do the one-leg stand–two other portions of the field sobriety test. As stated by the detective, "[h]e wanted to end everything right there." Detective Campbell offered Garcia the one-leg stand test, offered him a chance to recite the ABCs, and asked him to walk toward the front of the police car so "his walking" would be captured by the in-car video. Garcia refused.

After Garcia refused the remaining tests, Detective Campbell placed him under arrest for driving while intoxicated. The detective advised Garcia of his *Miranda* rights. After advising Garcia of his *Miranda* rights, Detective Campbell asked Garcia if he had been arrested before. Garcia admitted he had a prior arrest for driving while intoxicated. The detective then advised Garcia about his rights regarding the breathalyzer and the giving of blood samples and the consequences of refusing to take the test or provide a blood sample. Garcia refused to take the test and refused to give a blood sample.

Detective Campbell testified he determined from his contact with Garcia and the results of the HGN test that Garcia was intoxicated. Detective Campbell stated that based on his training and experience he believed Garcia had lost the normal use of his mental and physical faculties due to "the introduction of intoxicants or some type of narcotic into his system."

At this point in the detective's testimony, the State introduced the in-car video into evidence. Ultimately, the in-car video was admitted into evidence and was viewed by the trial court, which was acting as the trier of fact. As the trial court viewed the video, Detective Campbell explained what was happening.

The State also called San Antonio Police Officer David Luther as a witness. Officer Luther stated he has been a police officer since 2006, and at the time of the events in this case was working in the DWI unit. The officer explained that in the course of his career he had stopped intoxicated drivers many times, and performed many field sobriety tests.

On July 11, 2008, Officer Luther was working the third traffic shift from 8:00 p.m. to 6:00 a.m., just like Detective Campbell. While on patrol, he heard Detective Campbell broadcast on the police radio that he was following a driver who was refusing to stop. Ultimately, Officer Luther went to the location where Detective Campbell had pulled Garcia over.

Officer Luther testified that although he did not attempt to conduct any field sobriety tests on Garcia, he was able to observe Garcia from "a couple of feet away." He stated Garcia had bloodshot eyes, was swaying, and had a strong odor of intoxicants emanating from him. On cross-examination, Officer Luther described the odor as "beer or the ferments of beer." He specifically denied the odor was coming from the car, and he did not observe any stains or marks on Garcia to suggest he had merely spilled beer on his clothing.

Officer Luther stated he observed Detective Campbell perform the HGN test and noticed Garcia was swaying. He also heard Garcia refuse any other tests.

The State's final witness was Gina Martinez, a fingerprint examiner and custodian of records with the Bexar County Sheriff's Office. Martinez testified she took Garcia's fingerprints during the trial. She stated Garcia's fingerprints matched the prints of an individual who had two

prior convictions for the offense of driving while intoxicated that occurred before the current matter. The judgments from those convictions were admitted into evidence.

After Martinez's testimony, the State rested. Garcia then presented several witnesses. The first witness was Maria Zamaripa, who stated she had been Garcia's "off and on . . . girlfriend." She stated she considered herself married to Garcia and they have children together. Zamaripa admitted Garcia is drunk "[l]ike every weekend." Zamaripa stated she and Garcia were texting before his arrest. She said he had left his sister's house and was returning home. According to Zamaripa, they were arguing by text, and she ultimately refused to answer his texts or his calls. The next thing she knew, Garcia texted he was being pulled over by police.

Zamaripa told the court the vehicle Garcia was driving on the night of his arrest smelled like "alcohol and oldness." She said the alcohol smell was a result of Garcia's father's can collection, which he kept in the vehicle in bags until he could take them to the recycling center. She stated the cans smelled because they were not rinsed out before they were placed in the car.

Zamaripa admitted she had brought complaints against Garcia for injury to a child, for which he was arrested, and for domestic violence. Zamaripa also admitted she had been arrested for shoplifting, but she successfully completed deferred adjudication.

On cross-examination, Zamaripa stated that on the day Garcia was arrested, she had not seen him since about 3:00 p.m. when he dropped her off at her mother's house. When pressed, she admitted there were domestic violence issues, which resulted in her requesting a protective order, that generally arose when Garcia was drinking. She also admitted Garcia had a "[p]retty bad" drinking problem.

Garcia also called his father, Jesus, as a witness. The father admitted he owned the car driven by Garcia on the night of the arrest. He confirmed Zamaripa's testimony about the cans

in the car giving off the smell of alcohol. The father stated his can collection included beer cans and soft drink cans, and he confirmed he did not rinse out the cans before placing them in bags in the vehicle.

However, the father denied the alcohol smell could transfer to a person's clothes, admitted there were no cans in the vehicle on the night of the arrest, and denied that any beer from any of the cans had spilled onto the seats. The father also stated it had "been a good while" since he had beer cans in the vehicle, but admitted it was possible "some beer smell" could exist in the vehicle.

Garcia next called his sister, Maria Garcia, as a witness for the defense. She testified that on the evening of the arrest, Garcia was at her home. The sister stated he was there for approximately two or three hours and they spent the time talking about his problems with Zamaripa. She said he was "real upset" and he kept texting and talking with Zamaripa during the visit. The sister stated he was crying at times.

Maria stated he did not drink alcohol at her house and "didn't seem drunk," just upset. She said she told Garcia he should stay at her house; she did not want him to drive when he was so upset. Maria denied any concern about his driving based on a lack of sobriety.

Maria seemed to confirm that her father's vehicle smelled of alcohol. She testified her father lives with her, but she does not allow him to drink in the house. So, when he wants to drink, he gets in his vehicle and when he is finished, he "chunks the cans to the back."

Maria admitted she did not know what time Garcia arrived at her house, testifying it could have been as early as 9:00 p.m. or as late as 11:00 p.m. She thought he stayed two or three hours, but could not say exactly when he left. Maria did say he could have left as late as 2:00 a.m.

Garcia testified on his own behalf. He began his testimony by admitting to his prior drunk driving convictions, to a prior conviction for possession of a controlled substance, and to a prior assault conviction. Garcia then began testifying about the events of July 11, 2008.

Garcia stated he and Zamaripa had a "big argument" that day and she decided to take the children and leave. He was upset, "under a lot of emotional stress," so he went to his sister's house for advice after he dropped Zamaripa and the children at her mother's house. Garcia said he took his father's vehicle, which was "smelly" because of beer cans in the back. However, he denied the smell in the vehicle would cause his clothes to smell like alcohol.

Garcia denied he was drinking that day–during the fight with Zamaripa, at his sister's house, or in the vehicle. He also denied there was any alcohol in the vehicle. Garcia said he left his sister's house around 2:00 a.m., intending to go home. He stated that during the drive home, he continued to call and text Zamaripa. He admitted he would take his eyes off the road "for a second" while he was texting. Garcia denied driving in the median or on the shoulder.

Garcia stated he never noticed Detective Campbell until he was on the upper deck of Interstate 35. He said until that time, he had no idea he was being followed. Garcia testified he did not pull over when he first saw the lights because "[t]here was nowhere to pull over." Garcia said he pulled over at the first safe opportunity. He denied attempting to evade police.

Once he stopped, he denied that Detective Campbell had to turn off the vehicle or remove the keys. He said he put the car in park and tried to call Zamaripa. He admitted the vehicle was still running while he was attempting to make the call. Garcia said he told Zamaripa he "was going to jail."

Garcia testified that Detective Campbell told him he was stopped because he was "swerving all over the road." Garcia denied drinking at all that day, but claimed he refused the

field sobriety tests because he "was just nervous . . . and shaky" and did not feel he could complete the test. He also claimed he did not have his "correct glasses," but instead had an old pair. Garcia admitted he could not see with the old glasses he was wearing, stating "I should not be driving."

Contrary to Detective Campbell's testimony, Garcia denied he was given a breath test refusal form, but admitted he chose not to take a breath test. Garcia said, "I didn't have a reason why. I just refused it." At trial, Garcia said that based on his past DWI experiences, he "had issues with DWI and didn't feel that those tests were accurate . . . so I didn't want to take the chance." Garcia then viewed portions of the in-car video and commented on certain portions of the tape.

As he viewed the video, Garcia pointed out that he used his blinker for all lane changes. Garcia admitting drifting outside his lane, but explained he was probably texting when this happened. At one point, he put his blinker on, indicating he was going to move into the lane to the right, but he did not. Garcia noted that he did not exit at the first exit after the officer turned on his lights, but claimed he could not do so safely. He said he was attempting to find another exit. The exit he eventually used was the exit he would use to go home.

Garcia denied swaying or stumbling. He claimed he kept putting his hands in his pockets because he was nervous. He also claimed he needed his glasses for the HGN test, but Detective Campbell refused. Detective Campbell had explained it was improper to allow a subject to wear glasses during the HGN test. On cross-examination, Garcia admitted he could see the light used for the HGN test and could follow the light with his eyes.

On cross-examination, Garcia admitted again to the prior drunk driving convictions. He also admitted to the assault conviction, as well as another conviction based on making terroristic

threats. He also admitted he was arrested for aggravated assault with a deadly weapon for attempting to run over Zamaripa with his vehicle.

Garcia claimed that when he was arrested by Detective Campbell there were beer cans in the vehicle and that those cans caused the smell of intoxicants. Detective Campbell, however, denied there were any beer cans in the vehicle. Garcia stated they must have not noticed them. Garcia stated he had not had any alcohol in a week, but he still refused the breathalyzer test. He admitted he had taken the test when he was previously stopped for driving while intoxicated.

As to the conflicts between his testimony and that of his father and Zamaripa, Garcia claimed they were either confused, nervous, or unaware of the actual facts. As for the video, he admitted he "touched" the lane markers and crossed over them at least once. When reviewing the video on cross-examination, Garcia claimed he could not see his car weaving out of his lane, and explained that when it did, it was because of an "incline" on the highway or because he was texting. Garcia explained he was not weaving, but making "corrections."

The defense then rested and closing arguments were made to the trial court. At the conclusion of the argument, the trial court, as the trier of fact, found Garcia guilty of driving while intoxicated, third offense. After a sentencing hearing, at which Garcia testified, the trial court sentenced Garcia to six year confinement and assessed a $1,500.00 fine. However, the trial court probated the sentence and fine, ordering Garcia to attend an alcohol program. Garcia filed a notice of appeal.

## ANALYSIS

In his sole point of error, Garcia contends the evidence is insufficient to support his conviction. Specifically, Garcia argues no rational trier of fact could have found beyond a

reasonable doubt that he was intoxicated at or immediately before the time he was stopped by Detective Campbell. We disagree.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence, the only sufficiency review permitted in criminal cases, we use the standard established in the Supreme Court's opinion in *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd). In this review, the relevant question is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. This standard takes into account the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* The standard requires that we resolve any inconsistencies in the testimony in favor of the verdict. *Gonzales v. State*, 330 S.W.3d 691, 694 (Tex. App.—San Antonio 2010, no pet.) (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)). Therefore, in analyzing a legal sufficiency challenge, we must determine whether the necessary inferences are reasonable based on the combined force of the evidence, direct and circumstantial, when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Mayberry*, 351 S.W.3d at 509.

### *Application*

Garcia was charged with felony driving while intoxicated. Accordingly, the State was required to present evidence establishing beyond a reasonable doubt that Garcia operated a motor vehicle in a public place while intoxicated, and that Garcia had been previously convicted of two

prior driving while intoxicated offenses. *See* TEX. PENAL CODE ANN. § 49.04(a), § 49.09(b)(2) (West 2011). Under the Texas Penal Code, a person is intoxicated if he did not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2). Evidence of intoxication may include slurred speech, blood shot eyes, the odor of intoxicants emanating from the alleged perpetrator or on his breath, unsteady balance, or a staggered gait. *State v. Webre*, 347 S.W.3d 381, 386 (Tex. App.— Austin 2011, no pet.) (citing *Harris v. State*, 204 S.W.3d 19, 25 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd)). Garcia does not contest the sufficiency of the evidence to show he was previously convicted of two prior DWI offenses; rather, Garcia challenges only the evidence to support the current DWI conviction.

As detailed above, two police officers observed Garcia on the night of his arrest and testified regarding his behavior and condition that evening. Detective Campbell testified Garcia "was very slow, sluggish kind of," and appeared to be in "a drunken stuper [sic]." The detective specifically opined that Garcia did not appear "to have all his mental faculties working correctly at the time," and was unable to follow simple instructions, was easily distracted, and he could not remember questions asked seconds before. Detective Campbell stated Garcia had a strong odor of intoxicants on his breath, specifically stating the odor was noticeable when Garcia was away from the vehicle as well, so it could not have been just an odor emanating from the car. Moreover, Detective Campbell testified that Garcia exhibited six of six clues on the HGN test, indicating he was intoxicated.

During Detective Campbell's testimony and during that of Garcia, the trial court, acting as the trier of fact, viewed the in-car video. The video showed, according to the detective, that

Garcia was weaving within his lane, touching the lane markers, and at times went beyond the lane markers into the other lane. It also seems to show that Garcia failed to stop when Detective Campbell initiated his lights and sirens, and continued driving when he could have stopped.

Officer Luther told the trier of fact that Garcia had bloodshot eyes, was swaying, and had a strong odor of intoxicants emanating from him. Officer Luther described the odor as "beer or the ferments of beer." He did not observe anything to indicate Garcia had merely spilled beer on his clothing.

In *Blank v. State*, we held that the testimony of two officers regarding their conclusions that the defendant was driving while intoxicated was legally sufficient to sustain the conviction, despite the defendant's denial of intoxication. 172 S.W.3d 673, 675-76 (Tex. App.—San Antonio 2005, no pet.) (op. on reh'g). Although Garcia presented evidence to counter the officer's assertions that he was intoxicated, and attempted to provide other explanations for the bloodshot eyes, lack of balance, failure of the HGN test, and odor of intoxicants, a rational trier of fact could have found Garcia's testimony incredible and the officer's testimony credible, resulting in a finding of guilt. *See Gonzales*, 330 S.W.3d at 695 (recognizing that even though defendant's testimony included alternate reasons for blood alcohol level, trier of fact was free to disregard his testimony and find him not credible).

Moreover, the trier of fact viewed the in-car video, which Detective Campbell asserted showed Garcia weaving within his lane, at times touching or driving over the lane markers, and failing to stop promptly when the detective attempted to pull him over. As noted above, Garcia attempted to explain that his lane maneuvers were the result of texting, not intoxication, and that he stopped as soon as it was safe to do so. However, just as with the other evidence, the trial

court was free to find the video did not support Garcia's claims, but rather his failure to maintain his lane was evidence he was driving while intoxicated. *See id.*

## CONCLUSION

When the evidence is viewed under the applicable standard of review, it is clear the evidence was legally sufficient to support Garcia's conviction for driving while intoxicated. Accordingly, we overrule Garcia's point of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish