

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00119-CR

———————————————

EDWARD GENE MOODY JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1838738

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Edward Gene Moody Jr. appeals his conviction for driving while intoxicated (DWI) third or more. *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b)(2). In two issues, he argues (1) that the trial court erred by denying his motion to suppress evidence related to his blood draw because the search warrant for the blood draw was based on an affidavit that failed to establish probable cause and (2) that the evidence was insufficient to establish the two jurisdictional prior DWI convictions.

Because we conclude (1) that the magistrate had a substantial basis for determining that probable cause existed and (2) that the evidence sufficiently established the two jurisdictional priors, we affirm.

## I. Background

In August 2024, Moody was involved in a major accident with another vehicle. Mansfield Police Officer Nicholas Barlette responded to the scene and identified Moody as the driver of one of the vehicles. Moody had struck the back of the other vehicle while it was stopped at a temporary construction-signal light.

When he arrived on scene, Officer Barlette heard from another officer and one of the fire department "guys" on scene that they had smelled alcohol coming from Moody. And a few witnesses reported that they had seen Moody throwing beer cans into the nearby ditch. When Officer Barlette approached Moody, he smelled a strong odor of alcohol on Moody's breath. Moody told him that he had had only two

24-ounce beers, which he "stuck with" throughout the encounter. Officer Barlette opined that Moody was cordial and cooperative with him.

As he spoke with Moody, Officer Barlette located the beer cans that had been thrown into the ditch next to Moody's vehicle. Moody admitted that he had thrown the cans into the ditch and that two of them were his. Officer Barlette then found more beer cans inside the vehicle. He asked Moody for his consent to perform standardized field sobriety tests (SFSTs), and Moody complied. Based on the results of the SFSTs and on Officer Barlette's overall observations, Officer Barlette determined that Moody was intoxicated and arrested him for DWI.

Officer Barlette subsequently requested Moody's consent to draw his blood, and he refused to sign the consent form for a blood draw. Officer Barlette then prepared an affidavit and a search warrant for the blood draw, had the warrant signed by a magistrate, and took Moody to the hospital for a nurse to collect the blood sample, which was sent for a blood-alcohol test. Moody's blood-alcohol concentration was 0.163.

Moody was charged with DWI felony repetition.[1] Before trial, he filed a motion to suppress the blood-draw evidence, asserting that the search-warrant affidavit prepared by Officer Barlette failed to show that his blood "would contain evidence of DWI or that [he] committed DWI." The trial court heard the motion and denied it,

___

[1]The indictment also included a habitual offender notice, which Moody does not challenge on appeal.

allowing the evidence to be admitted at trial. The trial court also allowed the State to admit—over Moody's objections—evidence of Moody's two jurisdictional priors: a 1995 DWI conviction and a 2022 DWI second conviction.

After hearing all the evidence, the jury found Moody guilty, and the trial court sentenced him to forty years' confinement. Moody timely appealed.

## II. Motion to Suppress

In his first issue, Moody argues that the trial court erred by denying his motion to suppress the evidence of his blood draw. He contends that the search-warrant affidavit failed to establish probable cause that his blood "would contain evidence of intoxication." We disagree.

### A. Standard of Review and Applicable Law

The police may obtain a defendant's blood for a DWI investigation through a search warrant. *Farhat v. State*, 337 S.W.3d 302, 305 (Tex. App.—Fort Worth 2011, pet. ref'd). The search warrant cannot issue unless it is based on probable cause that evidence of that offense will be found through the execution of the warrant. *Hyland v. State*, 574 S.W.3d 904, 910 (Tex. Crim. App. 2019); *Farhat*, 337 S.W.3d at 306.

Probable cause to support the issuance of a search warrant exists when, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found at a particular location. *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022). This is not a demanding standard. *Id.* A search-warrant affidavit must be read in a commonsense and realistic manner, and a magistrate may draw reasonable

4

inferences from the facts and circumstances contained in the four corners of the affidavit. *Martin v. State*, 620 S.W.3d 749, 763 (Tex. Crim. App. 2021); *see also State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017) ("[T]he magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit.").

Ordinarily, we apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). But when reviewing a magistrate's determination of probable cause to issue a search warrant, we apply a highly deferential standard of review because of the Fourth Amendment's strong preference for searches conducted pursuant to a warrant over warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *see also Baldwin*, 664 S.W.3d at 130 ("[R]eviewing courts give great deference to a magistrate's probable[-]cause determination to encourage police officers to use the warrant process."). We will uphold the probable-cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004) (applying *Gates* standard of review).

In our review, we are limited to the four corners of the affidavit. *Martin*, 620 S.W.3d at 766 n.24. Our duty is simply to ensure that the magistrate had a substantial basis for determining from the facts and circumstances contained in the affidavit that probable cause existed. *See Baldwin*, 664 S.W.3d at 130. When in doubt, we should defer to all reasonable inferences the magistrate could have made, including the magistrate's implicit findings. *Id.*; *McLain*, 337 S.W.3d at 271–72. We will "not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner." *Baldwin*, 664 S.W.3d at 130; *see also State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (noting that a reviewing court must review a search-warrant affidavit "realistically[] and with common sense").

## B. The Search-Warrant Affidavit

In the affidavit, Officer Barlette states that he is a peace officer for the Mansfield Police Department and that he responded to the accident involving Moody and another driver. He identifies Moody as the suspected party and Moody's "human blood" as the property to be searched. Specifically, Officer Barlette states that Moody's blood "constitutes evidence that the offense . . . was committed and that . . . [Moody] committed the offense." He then describes the offense and his investigation as follows:

> [Moody] operate[d] a motor vehicle in a public place while intoxicated by not having the normal use of mental or physical faculties by reason of the introduction of alcohol, controlled substance, drug, or dangerous drug into the body.

6

. . . .

. . . I arrived on scene and observed what appeared to be a rear-end collision at a red light. I approached a male, identified as Moody, . . . who was standing in front of a black sedan, which appeared to have rear-ended the vehicle in front of it. [Moody] stated that he was the driver of the vehicle. I observed [Moody] to have unsteady balance and I also detected the odor of an alcoholic beverage emitting from [his] mouth as he was talking to me. I asked [Moody] if he had consumed any alcoholic beverages and [he] stated he drank 2 beers, approximately 24 ounces each . . . . It should be noted that a witness on scene observed [Moody] take multiple cans of beer out of his vehicle and throw them in the ditch on the side of the road before we arrived on scene. [Moody] did admit this to me and stated two of those beer cans were his.

I then asked [Moody] to . . . perform SFST[]s. . . . [He] advised me that he is diabetic and may have trouble performing the tests. I then performed the SFST[]s on [Moody] and my observations of his performance are listed below. It should be noted while speaking to [Moody], the odor of an alcoholic beverage persisted, and grew stronger when he spoke, emitting from his mouth.

At the conclusion of [Moody's] SFST[]s, he was placed under arrest for [DWI]. Due to the totality of the circumstances, my observations, and the results of his SFST[]s (HGN), I determined that [Moody] had lost the normal use of his mental and physical faculties due to the introduction of an intox[ic]ant into his body. . . . I read the DIC-24[2] out loud to [Moody]. After reading the DIC-24, [Moody] denied consent to the drawing of a specimen of his blood.

In the section outlining his observations, Officer Barlette checks several boxes related to Moody's performance of the SFSTs and to his signs of intoxication. For example, on the horizontal gaze nystagmus test, Officer Barlette checks "[l]ack of

---

[2]The DIC-24 is the Texas Department of Public Safety's standard form that contains written warnings that must be read to an individual arrested for DWI before a police officer can request a voluntary blood or breath specimen from that individual. *See* Tex. Transp. Code Ann. § 724.015; *State v. Neesley*, 239 S.W.3d 780, 782 n.1 (Tex. Crim. App. 2007).

smooth pursuit" for both of Moody's eyes, and in the walk-and-turn test, Officer Barlette checks "[c]an't balance during instruction," "[s]tarts too soon," "[s]teps off line," and "[w]rong number of steps." On his one-leg-stand test, Moody "[p]uts foot down" and "[c]annot perform test." For the signs of intoxication, Officer Barlette checks the boxes indicating that Moody had a "[s]trong" odor of alcohol, that his speech was slow and moderately slurred, that his balance and walking was unsteady, that his eyes had a glassy appearance, and that he admitted to drinking alcohol.

At the end of the affidavit, Officer Barlette avers that he "determined that [Moody] was intoxicated and . . . placed him[] under arrest for Driving While Intoxicated" and that he "requested a sample of blood which [Moody] refused." He states that he requests a search-warrant for the blood sample "as evidence that the offense described was committed and that [Moody] committed said offense."

## C. Analysis

From the four corners of the affidavit, the magistrate could directly find the following facts: (1) Moody rear-ended another vehicle stopped at a red light; (2) witnesses saw Moody take beer cans out of his vehicle and throw them into the nearby ditch; (3) Moody admitted to Officer Barlette that he had thrown the beer cans into the ditch and that two of those cans were his; (4) Moody admitted that he had drunk two 24-ounce beers; (5) Moody performed SFSTs and the results indicated that he was intoxicated; and (6) Moody denied consent to the drawing of his blood after Officer Barlette read him the DIC-24. Further, Officer Barlette observed that Moody

8

had unsteady balance; that a "strong" odor of alcohol was emitting from his mouth, which grew stronger when he spoke; that his speech was slow and "moderately slurred"; and that his eyes had a "[g]lassy appearance." Officer Barlette averred that he was a peace officer and requested a search warrant for a sample of Moody's blood based on his belief that Moody had committed the offense of DWI. Specifically, he asserted that the blood "constitute[d] evidence" that Moody had committed that offense.

Given these direct facts and all the reasonable inferences derived from them, under the totality of the circumstances, the magistrate could have reasonably concluded that there was a fair probability that Moody's blood would contain evidence of intoxication. *See State v. Jordan*, 342 S.W.3d 565, 572 (Tex. Crim. App. 2011) ("Given the symptoms of intoxication described in the affidavit, we hold that the magistrate had a substantial basis to determine that evidence of intoxication would probably be found in the [defendant's] blood . . . ."); *Donosky v. State*, No. 02-16-00399-CR, 2017 WL 4819379, at *1, *5 (Tex. App.—Fort Worth Oct. 26, 2017, no pet.) (mem. op., not designated for publication) (holding that magistrate had a substantial basis for concluding defendant's blood would probably provide evidence of intoxication; affidavit stated that defendant involved in car accident admitted to consuming "two or three" drinks, that her speech was "thick-tongued," that she smelled of alcohol, and that she refused to provide a blood sample); *State v. Crawford*, 463 S.W.3d 923, 929–31 (Tex. App.—Fort Worth 2015, pet. ref'd) (op. on reh'g)

9

(holding that reasonable inferences from affidavit gave magistrate "a substantial basis to conclude a blood test had a fair probability . . . to provide evidence of [defendant's] intoxication"; affidavit stated that officer smelled alcohol on defendant's breath, that his speech was slurred, that he admitted he had been drinking, that he failed SFSTs, and that he refused to provide breath specimen); *State v. Moore*, No. 05-14-00123-CR, 2014 WL 5478209, at *3 (Tex. App.—Dallas Oct. 30, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that magistrate had a substantial basis for concluding defendant's blood would uncover evidence of her wrongdoing when affidavit stated that defendant's breath smelled strongly of alcohol, that she was "heavy footed," that she admitted to having one drink, and that officer noticed package of beer cans in boat); *Stovall v. State*, 440 S.W.3d 661, 668 (Tex. App.—Austin 2011, no pet.) (concluding that magistrate had a substantial basis for determining evidence of intoxication would be present in defendant's blood when affidavit stated that officers had observed defendant exhibiting signs of intoxication and that defendant had "performed poorly" on SFSTs); *State v. Webre*, 347 S.W.3d 381, 386 (Tex. App.—Austin 2011, no pet.) (concluding that observations described in officer's affidavit—bloodshot eyes, slurred speech, swaying, etc.—provided substantial basis that evidence of DWI would be found in defendant's blood); *Hogan v. State*, 329 S.W.3d 90, 95, 96 (Tex. App.—Fort Worth 2010, no pet.) (disagreeing with appellant's contention that affidavit failed to establish probable cause that his blood would provide evidence of that offense; affidavit stated that appellant had a "strong odor" of

10

alcohol and an unsteady balance, that he showed clues of intoxication on his SFSTs, and that he refused to provide a breath specimen).

Moody concedes that the affidavit "set forth probable cause that a DWI had been committed." But according to Moody, the affidavit should have "explain[ed] why [his] blood would contain evidence of intoxication." We will not take such a hyper-technical view of search-warrant affidavits. *See Crawford*, 463 S.W.3d at 930 (concluding that trial court erred by employing hyper-technical reading of affidavit that focused on facts not included); *Webre*, 347 S.W.3d at 386 (rejecting argument that affidavit should state specifically how defendant's blood would constitute evidence of DWI). Indeed, the failure to state the obvious is not a reason to invalidate a search warrant. *Lagrone v. State*, 742 S.W.2d 659, 662 (Tex. Crim. App. 1987); *cf.* Tex. Penal Code Ann. § 49.01(1)(B) (defining "alcohol concentration" for purposes of intoxication offenses, such as DWI, as "the number of grams of alcohol per . . . 100 milliliters of blood"); *Webre*, 347 S.W.3d at 388 (noting that "[i]t would be nonsensical to ask a magistrate to ignore the commonly known role that blood testing plays in driving-while-intoxicated offenses").

We conclude that the magistrate had a substantial basis for determining from the facts and circumstances contained in the affidavit that probable cause existed. Accordingly, we hold that the trial court did not err by denying Moody's motion to suppress, and we overrule his first issue.

## III. Sufficiency of the Evidence

In his second issue, Moody argues that the evidence was insufficient to establish the two jurisdictional priors for this DWI felony repetition charge. He contends that the State's evidence failed to connect him to both prior convictions. We disagree.

### A. Standard of Review and Applicable Law

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Hooper v. State*, 214 S.W.3d 9, 15, 17 (Tex. Crim. App. 2007) (permitting "inference stacking" as long as inferences are reasonable in light of "combined and cumulative force of all the evidence").

DWI becomes a third-degree felony when it is shown on the trial of the offense that the defendant has been convicted twice before of any other offense related to the operation of a motor vehicle while intoxicated. Tex. Penal Code Ann. § 49.09(b)(2). To establish that a defendant has been convicted of a prior offense, the

State must prove beyond a reasonable doubt that (1) a prior conviction exists and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. *Id.* Rather, the State may use any type of evidence, including circumstantial evidence, to meet its burden of proof. *Id.* at 922; *Human v. State*, 749 S.W.2d 832, 834, 836 (Tex. Crim. App. 1988) (op. on reh'g).

The proof that is adduced to establish the connection between conviction and defendant resembles a jigsaw puzzle—the trier of fact fits the pieces together, weighs the credibility of each piece, and determines if the pieces fit together sufficiently to complete the puzzle. *Flowers*, 220 S.W.3d at 923 (citing *Human*, 749 S.W.2d at 835–36). The trier of fact looks at the totality of the evidence admitted to determine whether there was a previous conviction and whether the defendant was the person convicted. *Id.* The determination of whether the State has met its burden of proof is made on a case-by-case basis. *See Human*, 749 S.W.2d at 835–36.

Here, the indictment alleged, and the State was required to prove, the following jurisdictional priors: (1) Moody was convicted of DWI on November 8, 1995, in cause number M95-01718 in the County Court at Law Number 2 of Johnson County, Texas and (2) Moody was convicted of DWI misdemeanor repetition on April 21, 2022, in cause number 2210140 in the County Court at Law No. 2 of Ellis County, Texas.

13

**B. The State's Evidence**

State's Exhibit 1 is a certified record of an April 21, 2022 conviction for DWI 2nd in cause number 2210140CR in the County Court at Law No. 2 in Ellis County. The judgment lists the defendant as "Edward Moody" in typed print, but between his first and last name, "^Gene" is handwritten in, and ", Jr." is handwritten at the end of the name. Included with the judgment is a "Certificate of Thumbprint" with the defendant's right thumbprint and his signature, which he signed in cursive as "Edward Moody." The charging information in that case alleged that the defendant, "Edward Moody,"[3] had previously been convicted of DWI "on the 11/08/1995, in cause number M95-01718 in the Johnson County Court at Law 2 of Johnson County, Texas." The defendant in State's Exhibit 1 pleaded "guilty" to the information's allegations.

State's Exhibit 2 is a certified record of the November 8, 1995 DWI conviction against defendant "Edward Gene Moody" in cause number M95-01718 in the County Court at Law Number 2 in Johnson County, Texas. The judgment has the defendant's right thumbprint, though it is not a clear image. The various documents in the record of that conviction identify the defendant as both "Edward Moody" and "Edward Gene Moody," but he signed all the relevant documents in cursive as "Edward G. Moody Jr."

---

[3]The charging information does not have the same handwritten corrections to the defendant's name as the judgment.

14

The jury also heard fingerprint-analysis testimony from Deputy Paul Rojas, who had worked in the error-resolution unit of the Tarrant County Sheriff's Department since 2009 and had completed a 40-hour fingerprint-analysis class. Deputy Rojas testified that he had taken Moody's fingerprints before trial so that he could compare them to the fingerprints in State's Exhibits 1 and 2 and to State's Exhibit 3—a certified copy of fingerprints from the Tarrant County jail.[4] Deputy Rojas testified that the fingerprints he had taken from Moody before trial matched the fingerprints on State's Exhibit 3. He also testified that the identifying information—Moody's name, date of birth, race, sex, and county identification number—was consistent between the two sets of fingerprints.

When asked to compare the two sets of fingerprints with the thumbprint on State's Exhibit 1, Deputy Rojas opined that they all matched. He explained that the prints were a ten-point match; the thumbprint was a "loop print" with an identifiable scar on it, and the prints had "[s]ome bifurcations, ending ridges." In other words, Deputy Rojas testified that the fingerprints that he had taken, the fingerprints from the Tarrant County jail, and the thumbprint on State's Exhibit 1—the 2022 DWI conviction—all relate back to Moody.

As for the thumbprint on State's Exhibit 2—the 1995 DWI conviction—Deputy Rojas testified that he was not able to match that thumbprint with any of the other fingerprints because it was smudged, and the judgment had been photocopied

_____

[4]State's Exhibit 3 was admitted for record purposes only.

15

so many times that the print itself became degraded. But he explained that Moody could still be identified as the defendant in State's Exhibit 2 because it had his name and the same cause number and court information as the prior DWI conviction alleged in State's Exhibit 1.

**C. Analysis**

Moody contends that the State's evidence failed to connect him to the two prior convictions because in State's Exhibit 1, "the names are inconsistent with 'Edward Gene Moody, Jr.' added by hand," and in State's Exhibit 2, "[t]he fingerprint is unusable." He argues that the State "bootstrapp[ed] one into the other through a case number" to try to prove that the two convictions were Moody's. We conclude that the evidence was sufficient.

The defendant in State's Exhibit 1 had the same name as Moody. While part of that name may have been handwritten in, it was up to the jury as trier of fact to weigh the credibility of that piece of the puzzle. *See Flowers*, 220 S.W.3d at 923. In any event, the jury heard testimony from an experienced fingerprint analyst who identified the thumbprint on State's Exhibit 1 as belonging to Moody—a fact that Moody does not dispute.

Like State's Exhibit 1, the defendant in State's Exhibit 2 also had the same name as Moody. Specifically, the judgment identifies him as "Edward Gene Moody" and he signed his name as "Edward G. Moody Jr." Further, the jury could compare

16

the defendant's signature in State's Exhibit 2 to the signature in State's Exhibit 1, which are arguably similar.

In addition to the name and signature connections, the defendant in State's Exhibit 2 is connected to Moody through the conviction record in State's Exhibit 1. In State's Exhibit 1, the State alleged the State's Exhibit 2 conviction as a prior conviction, and the defendant—Moody—pleaded guilty to the allegations contained in State's Exhibit 1. Moody therefore admitted that he was the defendant in the State's Exhibit 2 conviction. *See Jones v. State*, No. 2-08-298-CR, 2009 WL 1905372, at *2 (Tex. App.—Fort Worth July 2, 2009, pet. dism'd) (mem. op., not designated for publication).

As for Moody's contention that the evidence was insufficient because the fingerprint in State's Exhibit 2 is "unusable," he cites no authority, and we have found none, requiring a fingerprint to sufficiently link a prior conviction to a defendant. *See Flowers*, 220 S.W.3d at 921, 925 (holding that State's evidence sufficiently proved prior DWI conviction even though conviction printout did not contain appellant's fingerprints); *Nalls v. State*, No. 02-16-00328-CR, 2018 WL 651193, at *5 (Tex. App.—Fort Worth Feb. 1, 2018, no pet.) (mem. op., not designated for publication) (rejecting argument that State failed to link prior conviction to appellant because judgment did not contain a fingerprint); *see also Turnbow v. State*, No. 02-09-00438-CR, 2010 WL 4486223, at *5 (Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (per curiam) (mem. op., not designated for publication) (affirming conviction; State used other evidence

to link defendant to prior DWI conviction when certified copy of record for that conviction did not display identifiable fingerprint).

Considering all the evidence together and viewing it in the light most favorable to the verdict, we conclude that the State's evidence sufficiently linked Moody to the two prior convictions. We therefore hold that the evidence was sufficient to support the jury's finding—implied by its guilty verdict—that Moody had previously been twice convicted of DWI as alleged in the indictment. Accordingly, we overrule Moody's second issue.

## IV. Conclusion

Having overruled both of Moody's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 30, 2026