**Affirmed and Opinion filed October 23, 2018.**



**In the**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-17-00660-CR

**DIEGO BALDEMAR ISLAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 1413044**

## O P I N I O N

Appellant Diego Baldemar Islas was indicted on a felony charge of intoxication manslaughter. *See* Tex. Penal Code Ann. § 49.08 (West 2018). Appellant pleaded guilty after the trial court denied his motion to suppress evidence of intoxication obtained from a blood draw. The trial court sentenced appellant to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In a single issue, Appellant challenges the trial court's denial of his motion to suppress evidence obtained from the blood draw. We overrule

appellant's issue and affirm.

## I. BACKGROUND

At approximately 1:00 a.m. on New Year's Day 2014, appellant was driving when he ran a red light and hit another vehicle. The collision killed a passenger in the other vehicle. Appellant was taken to the hospital.

At the hospital, appellant's blood was taken three times. At 2:40 a.m., hospital personnel drew a sample of appellant's blood for medical purposes. After appellant refused to voluntarily provide a blood sample for police, Officer Perales of the Houston Police Department's DWI Task Force instructed hospital personnel to draw appellant's blood without a search warrant; this sample was taken at 2:59 a.m. Perales subsequently sought a search warrant authorizing a blood draw from appellant. Perales supported his warrant request to the Harris County magistrate with an affidavit.

The affidavit, sworn to by Perales, stated and supported Perales's belief that appellant had been unlawfully operating a motor vehicle in a public place while intoxicated. According to the affidavit, Officer Bymaster was dispatched to the scene of the collision and spoke to a witness. The witness stated she had observed appellant's vehicle run the red light and "T-bone" another vehicle. A person had been ejected from the other vehicle and the witness unsuccessfully attempted C.P.R. on that person. Bymaster came into contact with appellant and observed he had "a distinct odor of alchol [sic] emitting from his person and breath." Bymaster then requested a drug recognition unit respond to the incident. Perales responded and met Bystander and appellant at the hospital. At the hospital, Perales observed that appellant "had a distinct odor of alcohol emitting from his breath, slurred speech, and cyclic mood swings." "Defendant admitted to drinking one eight ounce drink that contained Jack Daniels alcohol and Coke at 12:20 a.m." The affidavit further

2

explained that Perales administered the horizontal gaze nystagmus test, and appellant showed six clues of intoxication. Based on the totality of the circumstances, including appellant's actions and performance prior to the testing, Perales formed the opinion that appellant was intoxicated by alcohol and had lost the normal use of his mental and physical faculties. The affidavit concluded with a request for the issuance of a warrant to take a sample of appellant's blood.

At 4:07 a.m., the magistrate determined probable cause existed and issued the search warrant based on the facts contained in the affidavit. At 5:24 a.m., appellant's blood was drawn pursuant to the warrant.[1]

Toxicology results for the blood sample taken pursuant to the warrant indicated that appellant had a blood alcohol concentration of 0.075. Retrograde extrapolation from this result indicated that appellant's blood alcohol concentration at the time of the collision was between 0.08 and 0.14.

Appellant was indicted on a felony charge of intoxication manslaughter.

Before the trial court, appellant moved to suppress the evidence obtained from all three blood draws. The trial court ultimately granted appellant's motion with respect to the first two blood draws but not the third. In support of its ruling, the trial court made the following relevant conclusions of law:

> The fact that a warrantless blood draw had already been obtained was not a material fact that needed to be included in the affidavit for the second legal blood draw.

> If the fact that a warrantless blood draw had already been performed had been included in the affidavit for the second legal blood draw it would have had no legal bearing on the Magistrate's decision as to whether to issue the warrant in this case.

---

[1] There is no evidence in the record that the State obtained toxicology results on the blood samples drawn before the warrant was executed.

Appellant waived a jury trial and pleaded guilty to intoxication manslaughter without an agreed recommendation as to punishment. After a punishment hearing before the trial court, the trial court found that appellant used or exhibited a deadly weapon during the commission of the offense. The trial court sentenced appellant to ten years of confinement in the Institutional Division of the Texas Department of Criminal Justice. Having retained his right to appeal, Islas now appeals the trial court's denial of his motion to suppress evidence obtained in the third blood draw.

## II. ANALYSIS

### A. Standard of review

When reviewing a trial court's ruling on a motion to suppress, we generally apply a bifurcated standard of review, giving almost total deference to the trial court's determinations of fact and reviewing de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, where the motion to suppress is based upon a magistrate's decision to issue a warrant, there are no credibility determinations to which we must defer because the trial court is constrained to the four corners of the affidavit. *Id.*

When we review the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *Id.*; *see Illinois v. Gates*, 462 U.S. 213, 236 (1983). "As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold that magistrate's probable cause determination." *McLain*, 337 S.W.3d at 271; *see State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (explaining that review of magistrate's issuance of search warrant is "not de novo" and that "great deference is given to the magistrate's determination of probable

4

cause"). Under this highly deferential review—which the Texas Court of Criminal Appeals calls the "substantial basis" standard—the reviewing court's duty is simply to ensure the magistrate had a substantial basis for concluding that probable cause existed. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009–2010)).

## B. Probable cause required for blood samples

The United States and Texas Constitutions provide that no search warrant shall issue except upon probable cause as supported by an oath or affirmation. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. Similarly, the Texas Code of Criminal Procedure provides that no search warrant shall issue except upon an affidavit establishing probable cause. *See* Tex. Code Crim. Proc. art. 18.01(b) (West 2018). A search warrant may be obtained from a magistrate only after submission of an affidavit setting forth facts establishing probable cause. *State v. Jordan*, 342 S.W.3d 565, 568 (Tex. Crim. App. 2011); *see* Tex. Code Crim. Proc. art. 18.01(b).

Probable cause exists if, under the totality of the circumstances in the affidavit, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued. *Jordan*, 342 S.W.3d at 568–69; *Flores*, 319 S.W.3d at 702; *see Gates*, 462 U.S. at 238. In other words, probable cause exists when a magistrate has "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Dugas*, 296 S.W.3d at 116.

Where the search warrant sought is for blood evidence to prove intoxication, the magistrate typically must determine probable cause exists that a blood test would provide evidence showing appellant was intoxicated. *See Thom v. State*, 437 S.W.3d 556, 561 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Whether the facts stated in the affidavit establish probable cause depends on the totality of the circumstances.

5

*Dugas*, 296 S.W.3d at 116. Evidence of intoxication may include, for example, slurred speech, bloodshot eyes, or the odor of alcohol on the breath. *Harris v. State*, 204 S.W.3d 19, 25 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985)).

In this case, the magistrate's role was to determine whether there was a substantial basis to believe that evidence of driving while intoxicated, i.e., an illegal concentration of blood alcohol, would be found in appellant's blood. The observations described in Perales's affidavit—appellant's running a red light, hitting another vehicle, the odor of alcohol emitting from appellant's breath, his slurred speech and cyclic mood swings, as well as the clues obtained from the horizontal gaze nystagmus test—provided a substantial basis to support the magistrate's determination of probable cause that appellant had been driving while intoxicated. Defendant's admission that he had one alcoholic drink prior to the collision also supported this determination. Considering the totality of the circumstances recounted within the four corners of the affidavit in this case, the magistrate had a substantial basis for concluding probable cause existed.

## C. *Franks v. Delaware*

Appellant argues that the affidavit failed to state probable cause because the affiant omitted any reference to the prior warrantless blood draws. Appellant asserts that the affidavit used to obtain the search warrant was therefore misleading, and the evidence obtained in the third blood draw should have been suppressed under *Franks v. Delaware*, 438 U.S. 154 (1978). Appellant contends that once an adequate sample of blood had been obtained, the State could not seek a warrant to obtain more blood without informing the magistrate that the blood had already been obtained and providing some reason that an additional blood sample would provide additional material evidence. Appellant asserts that allowing a warrant for the State to take

6

another blood draw where no facts showed the previous blood draw was inadequate or ineffective is unreasonable per se under the Texas Code of Criminal Procedure.

In *Franks v. Delaware*, the Supreme Court of the United States held that if there is an affirmative misrepresentation in the warrant affidavit and the misrepresentation is material and necessary to establishing probable cause, then the warrant is invalid under the Fourth Amendment. 438 U.S. at 155–56; *Aguirre v. State*, 490 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2016, no pet.). This court has extended this ruling to material omissions. *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.) ("Such omissions are treated essentially the same as claims of material misstatements.").

Under *Franks*, if the defendant makes a substantial preliminary showing that a warrant affidavit contains a false statement or omission made knowingly, intentionally, or with reckless disregard for the truth and that statement is necessary to the finding of probable cause, a hearing should be held at the defendant's request. 438 U.S. at 155–56; *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007). At the hearing, the defendant bears the burden by a preponderance of the evidence to establish that a false statement was made—or a true statement was omitted— intentionally, knowingly, or with reckless disregard for the truth. *See Franks*, 438 U.S. at 155–56; *Melton*, 750 S.W.2d at 284. If the defendant carries that burden, then the false statement is removed from the affidavit, or the true statement is added, and the reviewing court must determine whether probable cause for the warrant still exists. *Melton*, 750 S.W.2d at 284. If it does not, then the warrant must be voided and the evidence seized pursuant to the search must be suppressed. *Id.* (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)).

Because we conclude the fact omitted was immaterial to the magistrate's probable-cause determination, we need not determine whether Perales's omission

7

was made intentionally, knowingly, or with reckless disregard for the truth. *See* Tex. R. App. P. 47.1.[2]  Appellant has not cited, nor have we found, any case or statute requiring that an affidavit in support of a warrant for a subsequent blood sample must inform the magistrate of the prior blood draw and provide reasons why an additional blood sample would provide additional material evidence.   Further, appellant cites no case or statute, nor have we found any, requiring that an affidavit in support of a warrant for a subsequent blood sample must allege facts showing the previous blood draw was inadequate or ineffective.  We know of no authority instructing that the failure to include this information in an affidavit should invalidate a magistrate's determination of probable cause.  The magistrate needed simply to determine whether there was a "fair probability" that evidence of an offense, i.e., driving while intoxicated, would be found in appellant's blood when the warrant issued.

The totality of the circumstances in the four corners of this affidavit shows that there was, at the very least, a "fair probability" that evidence of intoxication would be found in appellant's blood when the warrant issued. *See Jordan*, 342 S.W.3d at 568–69; *Flores*, 319 S.W.3d at 702; *see also Gates*, 462 U.S. at 238.  Even assuming Perales excluded appellant's prior blood draw from his probable-cause affidavit intentionally, knowingly, or with reckless disregard for the truth, we cannot conclude that inclusion of appellant's prior blood draws in the affidavit would have defeated a determination of probable cause for the warrant. *Cf. Renteria v. State*, 206 S.W.3d 689, 703–04 (Tex. Crim. App. 2006) ("assuming that *Franks* applies to omissions, the magistrate would have had probable cause to issue the warrant even with the inclusion of information" that prior search of van did not yield any

---

[2] For the same reason, we need not address appellant's argument that the State violated the separation of powers between the executive and judicial branches of government.

evidence).

Probable cause to support a warrant is reviewed under a totality-of-the-circumstances analysis. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location." *Id.* Here, the affidavit established that appellant had been drinking prior to the collision, hit another vehicle, smelled of alcohol, had slurred speech, and failed the horizontal gaze nystagmus test conducted on him shortly after the collision. The fact that appellant had previously had his blood drawn does not disprove probable cause. As such, the fact that appellant's blood already had been drawn was not material to the magistrate's determination of probable cause.

**D.    *Schmerber v. California***

Appellant argues in his brief that the magistrate also should have considered "whether there [was] probable cause that the search to be performed would be reasonable under the totality of the circumstances — what *Schmerber* [*v. California*] referred to as whether the intrusion was justified in the circumstances." Appellant asserts, "This must necessarily include the circumstance that the relevant blood sample already in possession of the police was all the evidence useful for their purposes." At oral argument, appellant argued that whether a search is reasonable and justified under the circumstances is an element of probable cause under *Schmerber*. We disagree.

*Schmerber v. California* is distinguishable from appellant's case. *Schmerber* did not involve review of a magistrate's probable-cause determination. *See generally* 384 U.S. 757 (1966). In *Schmerber*, the Supreme Court of the United States addressed the constitutionality of *warrantless* blood draws conducted for law-enforcement purposes under the Fourth Amendment. *See id.* at 759, 766–72. This

9

case does not involve the constitutionality of a warrantless blood draw.

Even if *Schmerber* applied to the circumstances of this case (it does not), *Schmerber* does not support appellant's argument. Nothing in *Schmerber* suggests that a probable-cause determination includes a reasonableness determination. *See generally id.* The Court's analysis of probable cause in *Schmerber* was separate and distinct from its analysis of reasonableness. *See id.* at 768–72.

The *Schmerber* Court identified a two-part analysis for determining the legality of a *warrantless* blood draw: "(1) 'whether the police were justified in requiring [the defendant] to submit to a blood test;' and, (2) 'whether the means and procedures employed in taking [the defendant's] blood respected relevant Fourth Amendment standards of reasonableness.'" *State v. Johnston*, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011) (quoting *Schmerber*, 384 U.S. at 768). The Court then evaluated whether the test was "justified" and whether it was "reasonable" as independent components of the test. *See Schmerber*, 384 U.S. at 768–72.

In determining whether the search was "justified," the Court considered two separate inquiries: the existence of probable cause and the existence of exigent circumstances. *Id.* at 768–71. First, the Court determined probable cause existed based on the officer's observation of signs of intoxication:

> Here, there was plainly probable cause for the officer to arrest petitioner and charge him with driving an automobile while under the influence of intoxicating liquor. The police officer who arrived at the scene shortly after the accident smelled liquor on petitioner's breath, and testified that petitioner's eyes were 'bloodshot, watery, sort of a glassy appearance.' The officer saw petitioner again at the hospital, within two hours of the accident. There he noticed similar symptoms of drunkenness. He thereupon informed petitioner 'that he was under arrest and that he was entitled to the services of an attorney, and that he could remain silent, and that anything that he told me would be used against him in evidence.'

*Id.* at 768–69.  The Court acknowledged, however, that probable cause alone would not satisfy the "justified" prong of the test:

> Although the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of petitioner's blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself, or was required instead to procure a warrant before proceeding with the test.

*Id.* at 770.  The Court determined that the warrantless search of the defendant's blood was "justified" because in addition probable cause, exigent circumstances existed which permitted an exception to the warrant requirement.  *Id.* at 770–71.  *But see Missouri v. McNeely*, 569 U.S. 141, 165 (2013) (holding natural dissipation of alcohol in bloodstream did not create per se exigency justifying warrantless blood draw).  The Court then separately addressed the second prong of the test— reasonableness.  *Schmerber*, 384 U.S. at 771–72.  At no point in the opinion did the Court address reasonableness as a component of, or in relation to, probable cause.  We reject appellant's argument that a reasonableness analysis should have been played a part in the magistrate's probable-cause determination or that it should play a part in our *Franks* analysis.

**E.     Reasonableness**

Even if reasonableness of a search were relevant to probable cause or a *Franks* analysis, we are not persuaded by appellant's arguments that the subsequent blood draw was per se unreasonable.  Appellant argues that under *Schmerber*, a reasonableness determination should have included "the circumstance that the relevant blood sample already in possession of the police was all the evidence useful for their purposes."  *Schmerber* does not support this contention.  The reasonableness prong of the *Schmerber* test contains two separate inquiries: (1) whether the test chosen (the means) was reasonable and (2) whether the test was performed in a

reasonable manner (the procedures). *Johnston*, 336 S.W.3d at 658 (citing *Schmerber*, 384 U.S. at 771).[3] Appellant does not argue that the test chosen in his case was unreasonable or that the test was performed in an unreasonable manner.[4] Rather, appellant argues that in every case, a subsequent search would be "*per se* unreasonable*" where no facts show that "the first blood draw was inadequate or ineffective." In support of his argument, appellant relies on the Texas Code of Criminal Procedure.

Appellant first cites Texas Code of Criminal Procedure article 18.01(d) to support the proposition that subsequent search warrants require special scrutiny; however, as appellant acknowledges, this case does not involve a subsequent warrant.

Appellant next references Texas Code of Criminal Procedure article 18.01(j) as providing that magistrates may issue a search warrant to collect a blood specimen from a person who refuses to submit to a breath or blood alcohol test. Appellant then argues that a person who voluntarily provided a blood or breath specimen "cannot have a warrant issued 'for another bite at the apple,' without some reason to believe the original blood draw was in some way defective[,]" and "the fact that the first seizure was not consensual should not by itself affect whether a warrant may issue for a second seizure." Essentially, appellant argues that under Texas Code of

---

[3] In *Winston v. Lee*, 470 U.S. 753 (1985), the Supreme Court of the United States further explicated *Schmerber*'s reasonableness prong. The *Winston* Court pointed out that in *Schmerber*, the Court considered "the extent to which the procedure may threaten the safety or health of the individual" and "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity." *Id.* at 761–62. The Court also noted that these interests must be weighed against "the community's interest in fairly and accurately determining guilt or innocence." *Id.* at 762.

[4] We do not hold that repeated blood tests could never be unreasonable. In certain circumstances, the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity may outweigh the community's interest in fairly and accurately determining guilt or innocence. *See Winston*, 470 U.S. at 762.

Criminal Procedure article 18.01(j), magistrates may issue search warrants to collect a blood specimen from a person who refuses to submit to a breath or blood alcohol test *unless the person's blood has already been taken without a warrant*. We reject appellant's attempt to inject this additional language, which does not appear in article 18.01(j).

We hold that omitting mention of the prior blood draws in the probable-cause affidavit supporting the search warrant for appellant's blood did not invalidate the warrant.

We overrule appellant's issue.

### III.  CONCLUSION

We affirm the judgment of the trial court.


/s/     Marc W. Brown
         Justice


Panel consists of Justices Busby, Brown, and Jewell.
Publish — TEX. R. APP. P. 47.2(b).