**Affirmed and Memorandum Opinion filed June 29, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00432-CR

---

**JONATHAN  ANTHONY  EDWARDS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1656534**

---

## MEMORANDUM  OPINION

A jury found appellant guilty of aggravated sexual assault, and the trial court assessed an agreed punishment of thirty-five years' confinement.  In a single issue, appellant contends that the trial court erred by denying his motion to suppress under *Franks v. Delaware*, 438 U.S. 154 (1978), because of material omissions from a search warrant affidavit.  We affirm.

## I. Legal Principles

The issuance of a search warrant depends on the existence of probable cause. *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021). Probable cause exists if there is a fair probability that evidence of a crime will be found at a specified location. *Id.* A "fair probability" is less than a preponderance of the evidence; it need not persuade a reasonable person "more likely than not." *See Rodriguez v. State*, 232 S.W.3d 55, 60 & n.21 (Tex. Crim. App. 2007). The test is whether a reasonable reading of an affidavit supporting an application for a search warrant provides a substantial basis for the magistrate's conclusion that probable cause exists. *See Diaz*, 632 S.W.3d at 892. This is a flexible and nondemanding standard. *Rodriguez*, 232 S.W.3d at 60.

A defendant may challenge the truthfulness of factual statements made in a search warrant affidavit. *Diaz*, 632 S.W.3d at 892 (citing *Franks*, 438 U.S. at 171–72). The defendant must show by a preponderance of the evidence that a material misstatement was made intentionally, knowingly, or with reckless disregard for the truth. *Id.* This court and the Court of Criminal Appeals have applied these principles to omissions from search warrant affidavits. *See Islas v. State*, 562 S.W.3d 191, 197 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see also Diaz*, 632 S.W.3d at 892 ("We have assumed that *Franks* applies to material omissions, but we have not decided the issue.").

If the defendant carries their burden to show material omissions made at least with reckless disregard for the truth, then the true statement is added to the affidavit, and a reviewing court must determine whether probable cause for the warrant still exists. *See Islas*, 562 S.W.3d at 197. In making this determination, we review whether probable cause exists as the magistrate would, looking at the totality of the circumstances. *See id.* at 198; *see also Diaz*, 632 S.W.3d at 892. We

2

interpret the affidavit in a "commonsensical and realistic manner, drawing reasonable inferences from the information." *Diaz*, 632 S.W.3d at 892 (quoting *State v. Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015)). The focus is on the combined logical force of the facts in the affidavit. *Id.*

## II. Background

The State applied for and was granted a warrant to search and seize appellant's saliva via a buccal swab. Appellant filed a written motion to suppress evidence obtained from this search and seizure, and the court held an evidentiary hearing. Four paragraphs of the search warrant affidavit are reproduced with minor redactions in Appendix A to this memorandum opinion. The first two paragraphs are based on information that the affiant, a Houston Police Department detective, learned from other officers' reports. The third paragraph describes a follow-up investigation in which the detective met with the complainant. The fourth paragraph is based on information from a sexual assault nurse examiner's (SANE) report.

To summarize the affidavit, the detective testified that the complainant and appellant were in a non-sexual dating relationship when appellant became angry with the complainant on the evening of November 27, 2019. Appellant struck the complainant in the head with a pistol and slept with her that night. On the following morning, appellant again became angry, slapped her, forced her legs apart, and put his penis into her vagina while the pistol was nearby. He did this without her consent while she was in fear of injury or death. When appellant left the apartment, the complainant called police. Officers arrived and found appellant driving his car towards the exit of the apartment complex. They found a loaded pistol under his leg. The complainant went to a hospital for a sexual assault

3

examination. A sexual assault kit was submitted to the Houston Forensic Science Center for DNA analysis.

According to the affidavit, the complainant told the responding officers at the scene that appellant struck her in the head with the pistol so hard that her ears began to ring. She told the detective during the follow-up interview that appellant struck her with the pistol so hard that she blacked out.

At the hearing, the trial court also admitted as exhibits several of the detective's police reports. The reports contain more detailed reproductions of the complainant's statements to the SANE and to the detective during the follow-up interview. A report indicates that the complainant told the SANE that when appellant hit her with the gun, she fell to the ground in pain.

The court admitted as an exhibit a report from the Department of Public Safety, which the detective had searched before submitting his search warrant affidavit. The report provides that the complainant had a record of nine arrests with three "convictions/adjudications" for "driving w/lic inv w/prev conv/susp/w/o fin res," "interfere w/public duties," and "theft prop>=$50 < $500."

The detective testified at the hearing that he was not aware that one of the officers who responded to the crime scene said, according to body-worn camera footage, that the complainant's "story doesn't add up." The detective testified that he did not see any indication from the other officers' reports that the complainant reported to them that she had passed out or blacked out.

The trial court overruled the motion to suppress, and the DNA evidence was admitted before the jury.

## III.    Arguments and Preservation of Error

On appeal, appellant generally complains about the detective omitting from the search warrant affidavit alleged "inconsistencies" from the complainant's statements, and appellant contends that the detective "embellished" information provided to him from the complainant.  Appellant appears to complain about several omissions from the affidavit that he never complained about to the trial court, either in his written motion or at the hearing.[1]  It is difficult to determine from his brief which particular omissions he contends should have been included in the affidavit.  Nor does appellant explain in his brief how probable cause is lacking with any missing information added to the affidavit.[2]

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint.  *See* Tex. R. App. P. 33.1.  A *Franks* complaint must be preserved at trial, and the defendant must identify the false portions of the affidavit.  *See Harris v. State*, 227 S.W.3d 83, 85–86 (Tex. Crim. App. 2007).  A complaint on appeal must comport with the specific complaint that the defendant timely lodged in the trial court. *Bleimeyer v. State*, 616 S.W.3d 234, 250 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

---

[1] For example, in his brief, appellant refers to the responding officers testifying that they did not observe visible injury to the complainant.  Appellant refers to the complainant's statement to the detective that the complainant did not see the gun until appellant hit her with it. Appellant refers to the complainant's statement that she was dizzy and threw up in a toilet.

[2] The State contends that appellant waived any error due to inadequate briefing.  *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (overruling inadequately briefed issues).  Assuming without deciding that appellant has not waived error due to inadequate briefing, we will construe his brief liberally and address this issue to the extent possible.  *See* Tex. R. App. 38.9 (briefing rules to be construed liberally).

From reviewing the arguments presented in appellant's motion, at the hearing, and in his brief on appeal, appellant has preserved error regarding the following alleged material omissions from the detective's search warrant affidavit: (1) the complainant did not tell the responding officers or the SANE on November 28 that she had passed out; (2) the complainant did not tell the SANE that appellant had the gun near him during the sexual assault; (3) one of the responding officers opined that the complainant's story didn't "add up"; and (4) the complainant's criminal history.

## IV. Analysis

Assuming without deciding that these alleged omissions were material and that the detective omitted them from the search warrant affidavit at least with reckless disregard, we conclude that probable cause for the search and seizure of appellant's saliva would still exist even if the omissions were added to the affidavit.

The search warrant affidavit recited the complainant's detailed statements in support of each element of aggravated sexual assault. *See* Tex. Penal Code § 22.021(a)(1)(A)(i). In particular, the complainant repeatedly stated to different officers and the SANE that appellant threatened her with a pistol and forced his penis inside her vagina. None of the omissions would have made any difference to the probable cause determination. *See Gonzales v. State*, 481 S.W.3d 300, 312 (Tex. App.—San Antonio 2015, no pet.) (reasoning that adding omitted information—that witness's statement was hearsay from another officer—"would make no difference to the probable cause determination"); *see also Renteria v. State*, 206 S.W.3d 689, 703–04 (Tex. Crim. App. 2006) (holding that the magistrate would have had probable cause to issue a warrant even with the inclusion of omitted information, e.g., that officer had already searched the vehicle

6

that was the subject of the warrant and found no evidence linking the vehicle with the crime).

Even if the complainant failed to tell the responding officers or the SANE every factual detail of the assault that she recited for the detective several days later—that is, whether she passed out and whether the gun was nearby—such alleged "inconsistencies" would not undermine the probative value of the information provided in the affidavit for the magistrate's determination on the existence of probable cause. *Cf. Jarnagin v. State*, 392 S.W.3d 223, 228 (Tex. App.—Amarillo 2012, no pet.) (affidavit was sufficient to support finding of probable cause despite a discrepancy between the deputy's affidavit and the complainant's statements about date of a sexual assault). The complainant's statements were not, in fact, "inconsistent" as appellant characterizes them. For example, appellant directs this court to no evidence that the complainant told the responding officers or SANE that she did *not* pass out, only that the officers and SANE failed to include in their reports a statement by the complainant that she *did* pass out.

Adding the complainant's criminal record to the affidavit—in particular, for no offenses tending to show bias against appellant or undermining her credibility regarding reports to police—would not prevent the magistrate from finding her statements reliable and that there was a fair probability that evidence of a crime would be found from collecting appellant's saliva. *See Heitman v. State*, 789 S.W.2d 607, 611–12 (Tex. App.—Dallas 1990, pet. denied) (reasoning that even if information omitted from search warrant about an informant's "extensive criminal record" and his "deal . . . to supply information about appellant in exchange for dismissal of four pending charges" were added to the search warrant, the affidavit would still be facially sufficient to give the magistrate probable cause to issue the

warrant); *see also Janecka v. State*, 937 S.W.2d 456, 464 (Tex. Crim. App. 1996) (false statement that unnamed informant had no criminal history—despite conviction for driving while intoxicated and participation in the crime that was the subject of the search warrant—was not material under *Franks*).

Appellant's sole issue is overruled.

## V.  Conclusion

The trial court did not err by denying appellant's motion to suppress. The trial court's judgment is affirmed.

/s/      Ken Wise
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan. (Hassan, J., concurring without opinion).

Do Not Publish — Tex. R. App. P. 47.2(b)

# Appendix A:  Partial Search Warrant Affidavit

Affiant reviewed HPD report ███████, and several supplements which were all written by Peace Officers employed by HPD, including Officer A.W. Golden. Affiant learned all of the following information from that report, which Affiant believes to be a credible and reliable source.  Affiant was called to investigate the allegations of Aggravated Sexual Assault (DW) of a female complainant who lived at ████████████ in Houston, Harris County, Texas.  Complainant N.P, who rents said apartment knows the Defendant by name and sight as they had a dating relationship, stated on November 28, 2019, at ██████████ in Houston, Harris County, Texas the Defendant sexually assaulted her while in possession of a pistol which your affiant knows can be a deadly weapon. Complainant stated to Officer Golden that on the night of November 27, 2019 the Defendant became angry because she was on her phone with her son's birthfather and began to slap her in the face several times with his hands. She stated he pulled out a small black pistol and struck her several times in the head with the pistol so hard her ears began to ring. She stated she feared for her life but went to bed and the Defendant slept with her.  Complainant stated the next morning which was November 28, 2019, the Defendant became angrier and continued to slap her and forced her back into the bed. Complainant, N.P. who Affiant found credible and reliable, stated the Defendant then forced her legs apart and forced his penis into her vagina while the pistol was near.

After the sexual assault, the Complainant was able to escape from the apartment and called the police. Officers arrived and took the Defendant into custody and recovered a loaded black Jimenez Arms .380 semiautomatic pistol with seven (7) live rounds of ammunition and a box of 12 other live rounds.  Officers arrested the Defendant while he was driving his car toward the exit said apartment location, and they found the loaded pistol under his leg.

Your affiant conducted a follow up investigation on December 4, 2019, and met with the Complainant.  She stated they did not have a sexual relationship.  She stated the Defendant kept her in the bed all night and the pistol near him. When he stated he was going to have sex with her she stated their dating relationship was not at that point and he grabbed her by the hair, pulled her back into the bed and then struck her with the butt of the pistol so hard she blacked out. Complainant stated she was fearful the Defendant would kill her with the pistol so she kept quiet while the Defendant placed his penis (male organ) into her vagina (female organ) without consent and under fear of injury or death.  Complainant stated the Defendant had the pistol with him while he was sexually assaulting her.

Your affiant read Memorial Hermann Hospital report #0████████, where SANE examiner Lisa Dixon wrote the Complainant stated the Defendant pointed the pistol at her and would not let her leave her apartment and she was afraid she would die. Complainant stated she asked the Defendant why he was acting like this as they were only dating and not having sex. Complainant stated while the Defendant was assaulting her he held her down by his hand and pried open her legs and forced his penis inside her vagina. She stated the sexual assault was painful and he ejaculated on her thigh. Complainant stated to the SANE that all she was thinking if she got the chance she would run and when the Defendant went to his car she ran and called the police.